UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM WHITE,

    Plaintiff,                            Civil Action No. 04-74588

v.                                         HON. JOHN CORBETT O'MEARA
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Kim White brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits (DIB) under the Social Security Act. Defendant filed a summary judgment motion which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Plaintiff did not file a motion for summary judgment. I recommend that Plaintiff's initial pleading, which I construe as a request for a reinstatement of benefits, be DENIED.[1]  Further, I recommend that Defendant's Motion for Summary Judgment be

---

[1] Plaintiff, pro se, filed a complaint containing only a one paragraph summary which states his reasons for disputing the administrative findings. However, *pro se* pleadings are liberally construed. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so

-1-

GRANTED.

## PROCEDURAL HISTORY

On July 1, 1994, Plaintiff filed an application for DIB, alleging disability onset as of April 2, 1994 due to polymyositis (Tr. 14, 29-31). The Social Security Administration determined that he was eligible for benefits on January 19, 1995 (Tr. 33). On August 23, 1996, the administration reviewed Plaintiff's disability status, determining that he continued to be disabled (Tr. 37). After a subsequent review in 2001, the administration determined that Plaintiff's disability ceased as of October 1, 2001 (Tr. 40). Plaintiff filed a Request for Reconsideration of Disability Cessation which was denied on November 4, 2002 (Tr. 57-58). Plaintiff then filed a timely request for an administrative hearing, conducted on October 28, 2003 in Oak Park, Michigan before Administrative Law Judge (ALJ) Jerome B. Blum (Tr. 66, 334). Plaintiff, pro se, testified (Tr. 336-342). Christian R. Barrett, M.D., acting as Vocational Expert (VE) also testified (Tr. 342-345). ALJ Blum found that Plaintiff was not disabled because although unable to perform his past relevant work, he could perform other work which existed in significant numbers in the national economy (Tr. 20).

On October 20, 2004, the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on December 8, 2004.

## BACKGROUND FACTS

---

construed as to do substantial justice"). Hence, the Complaint will be construed as Plaintiff's motion for summary judgment.

Plaintiff, born November 11, 1958, was age forty- five when the ALJ issued his decision (Tr. 21, 29). He graduated from high school (Tr. 16). Before Plaintiff's onset of disability on April 2, 1994, he worked as a dishwasher and cook (Tr. 16, 297). Plaintiff alleges that his disability, originally granted on the basis of symptoms of polymyositis, continues to the present (Tr. 16). Plaintiff also alleges that rheumatoid arthritis and weak muscles prevent him from working (Tr.17).

    **A.**    **Plaintiff's Testimony**

Plaintiff testified his arthritis and polymyositis had worsened since the time of his 1994 disability determination (Tr. 336). He reported increased difficulty in walking and bending his elbow and knee joints (Tr. 337). He stated that he currently lived with his mother, adding that he relied on her or other family members for transportation since his driver's license had expired (Tr. 337). Plaintiff reported that he had been treated by the same physician, Dr. Ritter, for approximately one year (Tr. 338). He testified that due to his illnesses the physician made monthly home visits (Tr. 338).[2]

Plaintiff stated that he had not worked since the 1994 disability determination (Tr. 340). He opined that he was unable perform even sedentary work, testifying that back pain prevented him from sitting for extended periods (Tr. 340). In the response to the ALJ's proposal, Plaintiff stated that he would be willing to submit to additional consultive

---

[2]The ALJ informed Plaintiff that his medical file did not contain any references to his treatment with Dr. Ritter (Tr. 339-340). He informed Plaintiff that he should forward any medical records created by Dr. Ritter to the SSA (Tr. 339).

examinations (Tr. 341). He reported that none of his physicians proposed that he undergo surgery for his condition(Tr. 341-342). He professed frustration that he could no longer work, indicating that he enjoyed his past work as a cook and volunteering in the community (Tr. 342).

### B. Medical Evidence

In April, 1994, prior to the SSA's disability determination, Plaintiff sought emergency treatment for joint pain and swelling (Tr. 153-155). He reported that he had first experienced joint pain and swelling three months earlier (Tr. 163). A blood analysis indicated that Plaintiff experienced chronic anemia (Tr. 163). Further tests performed the same month showed positive results for hepatitis C, possible myosotis, and possible rheumatic fever (Tr. 168). Plaintiff again sought emergency treatment two weeks later for breathing difficulties and again in May, 1994 for gastrointestinal bleeding due to a reaction from steroids prescribed for joint swelling (Tr. 172, 197). Discharge notes indicate that Plaintiff received blood transfusions and was placed on antispasmodics, anticholingerics, and antacids (Tr. 203).

In October, 1994, Edwin J. Westfall M.D., examined Plaintiff on behalf of the state Disability Determination Services (DDS), noting that Plaintiff had lost ten pounds in five months and complained of "marked pain with movement of all four extremities" (Tr. 208). Dr. Westfall concluded that Plaintiff's symptoms were consistent with a diagnosis of polymyositis (Tr. 210).

In December, 1994, William H. McGill, D.O. examined Plaintiff, finding that he was

unable to perform "repetitive functions requiring pushing, pulling, lifting, grasping, holding, carrying, twisting and turning of the trunk, climbing, squatting, stooping, repetitive ranges of motion of the neck, long standing, and walking," noting further that Plaintiff was unable to perform toe walking or heel walking and exhibited only "very poor" toe heel walking (Tr. 213-214). He noted that Plaintiff currently took Prilosec, Methotrexate, Tylenol #3, and Toradol (Tr. 214). Observing that Plaintiff was unable to sit or stand for extended periods, he concluded that Plaintiff was "markedly limited in his activities" (Tr. 216).

In November, 1997, Todd T. Best, M.D., examined Plaintiff on behalf of DDS (Tr. 235-238). Dr. Best found that Plaintiff did not show symptoms consistent with rheumatoid arthritis or polymyositis, opining that Plaintiff exaggerated his symptoms upon examination (Tr. 238). He concluded that although Plaintiff could not manipulate buttons or shoe laces without assistance, he retained the ability to carry twenty pounds, push, pull, and write (Tr. 239).

In January, 2000, Harvey Halverstadt, M.D. performed a psychiatric examination of Plaintiff, noting that he maintained good relationships with his extended family and friends (Tr. 242). Plaintiff denied a history of emotional problems, but admitted that he had been incarcerated for failing to pay child support and driving without a license (Tr. 243). He admitted to weekly use of marijuana in the past (Tr. 243). Dr. Halverstadt assigned Plaintiff a GAF of 70[3] (Tr. 245).

---

[3]GAF scores in the range of 61-70 indicate "some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning." American Psychiatric

In May, 2001 Plaintiff was again examined by DDS (Tr. 268-269). Peter Samet, M.D., noted that Plaintiff took Vioxx, Vicoden, and Soma for back and bilateral knee pain (Tr. 268). He observed that Plaintiff could squat and arise independently, and exhibited normal reflexes, stating that Plaintiff's examination was "normal, " and finding that he could perform a full range of activities (Tr. 269, 272). Dr. Samet's re-evaluation in August, 2001 noted a "slight amount of tenderness" in Plaintiff's right and low lumbar paraspinal muscles, but an otherwise full range of motion (Tr. 278). He found that Plaintiff did not exhibit symptoms of rheumatoid arthritis or polymyositis, adding that his symptoms appeared to be "subjective" (Tr. 278).

Subsequent to Plaintiff's administrative hearing, in November, 2003 Lopa S. Patel examined Plaintiff, noting that he complained of back, knee, and shoulder pain (Tr. 299). He recorded that Plaintiff was able to care for his personal needs without assistance and experienced no limitation of motion in the upper or lower extremities (Tr. 301). He found that Plaintiff retained an unimpeded ability to perform work-related activities (Tr. 305-308). A neurological examination performed the same month, also at the behest of ALJ Blum, found that Plaintiff's allegations of limitations contained "a great deal of exageration" (Tr. 310). Choon Soo Rim, M.D. observed further that the "[m]otor examination was incomplete since [Plaintiff] was not cooperative at all" (Tr. 310). Dr. Rim noted that Plaintiff's muscle tone was normal, finding no "objective evidence of definite dysfunction" (Tr. 310-311). Dr.

---

Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 32 (*DSM-IV-TR* ), 30 (4th ed.2000).

Rim concluded that Plaintiff retained the ability to lift twenty pounds occasionally and ten pounds frequently along with unlimited abilities to stand, sit, and walk (Tr. 313). Dr. Rim found that Plaintiff should be limited to occasional kneeling, crouching, and crawling, and should avoid all climbing, balancing, and stooping (Tr. 313).

### C. Vocational Expert Testimony

VE Dr. Christian R. Barrett classified Plaintiff's previous work as a dishwasher as unskilled, at the medium level of exertion and his work as a cook as semi-skilled, at the light level of exertion (Tr. 343). ALJ Blum posed the following question to the VE:

> "Assuming that, because of his arthritic pain in his back and in his legs and his arms and his hands, he can't go back to any of that former work, but assume that he can sit six of eight hours a day and work with up to 10 pounds. Could you tell us if any unskilled jobs exist in the metropolitan area, the state and the country that would fit that characterization?"

(Tr. 344).

The VE testified that such an individual could perform packaging, sorting, inspection, and assembly work, stating that approximately 5,000 of the jobs cited existed in the metropolitan Detroit area and that approximately 9,000 of such jobs existed statewide (Tr. 344). He stated that his job findings were consistent with the information found in the Dictionary of Occupational Titles (DOT) (Tr. 344-345). He indicated that if Plaintiff's allegations of limitations were incorporated into the hypothetical question, he would be unable to perform any of the jobs listed above (Tr. 345).

### D. The ALJ's Decision

ALJ Blum held that Plaintiff "was properly ceased effective" as of October 1, 2001

based on a medical improvement of his condition (Tr. 19). Citing Plaintiff's medical records, the ALJ found the severe impairments of rheumatoid arthritis, polymyositis and weak muscles (Tr. 20). Nonetheless, he determined that although these conditions were "severe" under 20 CRF § 404.1520(c), Plaintiff did not experience a severe impairment or combination of impairments that met or equaled any impairment listed in Appendix 1, Subpart P, 20 CRF Part 404 (Tr. 20). He found that while Plaintiff was unable to perform any past relevant work as a dishwasher or cook, he retained the "residual functional capacity to perform less than the full range of sedentary work" (Tr. 20).

ALJ Blum held that Plaintiff could perform a "significant number of jobs in the national economy" (Tr. 18). The ALJ, taking into consideration Plaintiff's age, education, and VE testimony, cited work as a packager, sorter, inspector, or assembly job as examples of work that could be performed by Plaintiff (Tr. 19).

Citing consulting medical sources, the ALJ found that contrary to Plaintiff's testimony he did not continue to experience functional limitations as a result of polymyositis (Tr. 18). In support of his credibility determination, the ALJ also cited a November, 2003 neurological evaluation, which showed a "rather significant discrepancy between [Plaintiff's] subjective complaints and objective findings" (Tr. 16 *referencing* Tr. 310 ).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a

scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Credibility

Plaintiff's letter to the Appeals Council and complaint in the present action alleges that the SSA improperly ceased his benefits effective October 1, 2001. *Complaint* at 2. He disputes one of his examining physician's finding that he retained the ability to pick up a coin. *Id.*[4] Plaintiff disputes the ALJ's conclusions which adopted the findings of his medical examiners rather than his allegations of limitations.

*Social Security Ruling* (SSR) 96-7p states that it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are or are not credible. *Id*, 1996 WL 362209, at 34484. The ALJ's decision must be based on specific reasons for the findings of credibility. *Id*. These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528,

---

[4]Plaintiff apparently refers to either Dr. Best's November, 1997 conclusion that he retained the ability to pick up a coin (Tr. 239) or an identical finding made by Dr. Samit in May, 2001 (Tr. 272).

536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).  Moreover, in reviewing the findings of the ALJ, the evidence must be reviewed as a totality, examining the record as a whole. *Mowery v. Heckler,* 771 F.2d 966, 970 (6th Cir. 1985).

An ALJ's credibility determination is guided by SSR 96-7p, which describes a two-step process for evaluating symptoms.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment...that can be shown by medically acceptable clinical and laboratory diagnostic techniques...." *Id*.  Second, SSR 96-7p mandates that:

> "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

C.F.R. 404.1529(c)(3) lists the factors to be considered in evaluating the credibility of subjective complaints:

> "Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other

symptoms." 20 C.F.R. § 404.1529(c)(3).

The hearing transcript indicates that in the absence of a treating physician's records, ALJ Blum ordered post-hearing examinations to ensure that he had an accurate account of Plaintiff's condition before issuing his decision (Tr. 345). Contrary to Plaintiff's implied assertions that ALJ Blum made a faulty credibility determination, I find that he properly cited and considered both prongs of SSR 96-7p in his findings (Tr. 14, 15, 20). Even assuming that both Dr. Best and Samit concluded erroneously that Plaintiff could pick up a coin, the medical evidence still points overwhelmingly to a non-disability finding. Plaintiff's medical records indicate a dearth of evidence to show continued disability beyond his subjective complaints. Aside from the lack of documentation corroborating his claims, the majority of Plaintiff's medical examiners since 1997 have opined that he exaggerated his limitations (Tr. 238, 244, 278, 310). In particular, Dr. Rim noted that Plaintiff appeared unwilling to cooperate in the efforts to create an accurate picture of his condition (Tr. 310).[5] The ALJ properly concluded that Plaintiff's assertion that he remains unable to work stands unsupported by objective medical evidence.

In addition to Plaintiff's failure to present objective medical evidence to support his allegations of limitations, the ALJ stated that his "testimony, physical appearance, and demeanor" at the hearing also lent credence to the medical findings suggesting non-disability,

---

[5]Plaintiff's allegations of disability during physical examinations stand at odds with his acknowledgment to psychiatrist Halverstadt that he visited friends and family regularly and also entertained visitors at home multiple times a week (Tr. 242).

noting that Plaintiff sat for the length of the hearing without apparent discomfort (Tr. 15).

As a general rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993). Further, the ALJ's finding is entitled to deference by the reviewing court. *Richardson, supra,* 402 U.S. at 401. In the absence of medical documentation supporting Plaintiff's allegations of continued disability, such deference is particularly appropriate in the present case. Because substantial evidence, properly culled from Plaintiff's records and testimony, supports the ALJ's credibility findings, they should be upheld.

I note in closing that Plaintiff submitted a recent letter request for appointment of counsel[6], accompanied by a letter from Dr. Michele Ritter, M.D. Dr. Ritter's letter, which was submitted without a date, states that on the basis of a "recently" ordered MRI, she believes that Plaintiff currently suffers from Multiple Sclerosis (MS). However, the Court cannot consider Dr. Ritter's submission. Assuming that Dr. Ritter's MRI testing and opinion letter are recent, her findings would be immaterial to Plaintiff's former application which did

---

[6] Plaintiff does not have an absolute right to the appointment of counsel, as he would in a criminal case. Rather, the Court requests members of the bar to assist in appropriate cases on a *pro bono* basis. The appointment of counsel in a civil case is not a constitutional right, but a privilege granted only in exceptional circumstances; it is not appropriate where a plaintiff's claims have only a slim chance of success. *See Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993); *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) ("Appointment of counsel in a civil case is...a matter within the discretion of the court. It is a privilege and not a right."). The Court has carefully reviewed the administrative record, and has given Plaintiff's claims a liberal construction. For the reasons set forth in this Report and Recommendation, the Plaintiff's claim for benefits based on this record has limited, if any, chance for success. Therefore, the request for the appointment of counsel will be denied.

not allege that he suffered from MS or present record evidence to suggest disability from another source. If Plaintiff wishes to establish that subsequent to the ALJ's August 20, 2004 administrative determination in the present case he experienced a deterioration of his condition or the onset of another illness, the appropriate remedy is to initiate a new claim for benefits alleging an onset date consistent with the deterioration. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). If Plaintiff wishes to use the later material, he must commence a new action for benefits. In the presently opened case, because substantial evidence supports the ALJ's credibility findings, they should be upheld. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## **CONCLUSION**

For the reasons stated above, I recommend that Plaintiff's initial pleading, construed as a motion for summary judgment requesting a reinstatement of benefits, be DENIED. Further, I recommend that Defendant's Motion for Summary Judgment be GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                            S/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE

Dated:  December 22, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 22, 2005.

                                            S/Susan Jefferson
                                            Case Manager